IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **Order on Defendant's** |
| | ) | **Motion for Statement of Facts &** |
| -vs- | ) | **Conclusions of Law for Each** |
| | ) | **Motion Submitted by Defendant** |
| Frederick Keiser, | ) | |
| | ) | |
| Defendant. | ) | Criminal Case No. 3:05-cr-80 |
| | ) | |

  Before the Court is the Defendant's Motion for Statement of Facts and Conclusions of Law for Each Motion Submitted by Defendant (Doc. # 67).  This Motion was filed on December 18, 2006.  In light of the fact that there are other more substantive motions pending before the Court and in recognition that there is little, if anything, that the United States can add to the record on this motion, the Court, being fully advised in the premises, makes this expedited ruling on the Defendant's Motion.

  The facts and circumstances of this litigation are well-known to the Court and will not be reiterated herein.  The Defendant was indicted on charges of Money Laundering in June, 2005.  He was originally represented by the Federal Public Defender's Office.  In December, 2005, Mr. Keiser retained private counsel.  On September 28, 2006 he terminated his relationship with his privately retained counsel.  On November 16, 2006 Mr. Keiser moved the Court for permission to proceed *pro se*.  By written Order dated December 4, 2006 (confirming an oral order of November 30, 2006) the Court approved Keiser's request to represent himself.

  Since advising the Court of his intention to represent himself  Mr. Keiser has filed a number of motions, some of which are ripe for decision and some of which are not ready for

ruling. The instant motion asks the Court to "furnish the defendant with a statement of facts and conclusions of law for each motion that he submits, in order for him to present errors of fact and law in the lower court's reasoning to the Eight Circuit Court of Appeals, and for this Court to grant this Defendant Due Process of Law and to 'clock in' and 'clock out' on the time spent processing each motion." (Doc. # 67).

At the outset the Court notes that it is very familiar with its obligation to create and preserve a record that allows for full review by appellate courts. See, Rule 12(d), FED. R. Crim. Proc. (2006)(stating: "When factual issues are involved in deciding a motion, the court must state the essential findings on the record."); United States v. Beck, 140 F.3d 1129, 1131 (8th Cir. 1998)("we remand a case to the district court when the district court has failed to set out its factual findings underlying its decision. . ."); United States v. McCoy, 200 F.3d 582 (8th Cir. 2000). It is the uninterrupted practice of this Court to fully explain its rulings on both the law and the facts and the Court will follow such a practice in the case at bar.

In reviewing the Defendant's Memorandum of Law in Support of the instant motion, the Court notes that the Defendant seems to have little faith in the judiciary or the judicial process and that many of his concerns are based upon these personal views. As the Court understands the Defendant's Memorandum, Mr. Keiser raises four different concerns. While the Court views many of the complaints as paranoid, based outside of reality and of such a nature that it would not ordinarily dignify them with a long discussion, given his status *pro se* and his obvious concerns, the Court will address each in turn.

First, Mr. Keiser asserts that he is "informed and believes thereon that every motion he files will be ruled on 'denied,' with neither findings of fact nor conclusions of law." (Doc. 67, p.

2) (It should be noted that the pagination of the Defendant's Memorandum is such that no page 1 exists, as used herein the Court will cite to the clearly erroneous pagination placed on the document by the Defendant). The defendant's claimed prescience is interesting, but the long record of this Court stands in direct opposition to this assertion. While many complaints are laid at the feet of courts with varying degrees of validity, this particular Court has never been the subject of criticism for failing to make findings or discussing the applicable law. In fact, such a contention would come as a bit of surprise to the Court as it has occasionally been accused of engaging in long winded discussions of arcane points of law and cluttering the record with discussions of tangential legal application to the issue at bar, but never has it been accused of refusing to develop a record that fully informs the appellate courts of the basis for its rulings. The Court does not have the ability to predict in advance of the filing of motions how it is likely to rule, but it can state with assurance that whatever rulings will be made will be of such a nature that they are susceptible of cogent review by the Court of Appeals.

Second, the Defendant believes that courts rule on motions in a fashion designed to demoralize parties and compel them to enter into plea bargains. (Doc. # 67, p. 4). Whatever Defendant's beliefs, the Court rules on motions without regard to the parties positions on settlement. The Court views settlement short of trial as a matter solely within the prerogative of the parties and any management of the case in a fashion that compels a settlement would be an improper and arbitrary approach. While the Court has, and will continue to make inquiry of *pro se* parties to make sure that they understand the potential consequences of their decisions, it makes no difference to the Court if the litigant proceeds to trial or settles the case so long as he makes the decision in a knowing and voluntary fashion. As an aside, this particular judge prefers

trial work to any other work that is presented on its docket–I am a trial judge by choice not by necessity and I view the highest obligation of the Court as providing a fair and impartial venue for jury trials.

Third, the Defendant believes that the Courts do not read motions, do not read briefs and if they do read the moving and supporting documents that they do not address the issues raised. More troubling, the Defendant believes that courts do not follow existing law and that they routinely ignore precedent to arrive at some preconceived personality-based result. (Doc. 67, p. 6). This Court has never ruled on a written motion without reading the moving and supporting documents and takes umbrage at the claim that it would base its decision on anything other than the facts as established in the record and the law, both statutory and as developed in the Courts.

The Court has read every pleading filed in the case at bar and has reviewed many of the authorities that have been cited by the parties. Before it rules on any of the motions it will have fully reviewed all of the documents relevant to the particular motion and it will have done sufficient research to fully inform the Court's decision.

It is worthy of note, however, that much of what the Defendant asserts to be controlling "law" cannot in fairness be described as law that the Court is empowered to consider under the doctrine of *stare decisis*. *Stare decisis* is the doctrine that holds that the Court is bound to "follow earlier judicial decisions when the same points arise again in litigation." BLACK'S LAW DICTIONARY, 1414 (7th Ed. 1999). Trial Courts are bound to apply the law as it is developed by Courts having jurisdiction over the lower court in question. For example, this Court must follow the law as developed in the Supreme Court of the United States and the Court of Appeals for the Eighth Circuit and, under certain circumstances, as developed by the North Dakota Supreme

Court. If the Court of Appeals for the Eighth Circuit has spoken directly on an issue before the court, it is not free to substitute its own notions of what the law is or ought to be. Where a superior court has specifically held on a question, the trial court simply lacks the legal competence to hold otherwise. Id.

In reviewing the Defendant's Memorandum it is apparent that he cites frequently to law that has been overruled in subsequent cases, is contrary to the established law of this circuit, is foreign or archaic (oft-times both) and has been the subject of express rejection by courts superior to the trial court. The briefs also include frequent cites to dissenting opinions, which by definition have no precedential value. Finally, the defendant also frequently cites secondary sources such as law review articles, debates in Congress, speeches by politicians and scholarly criticism that do not have the force of controlling law. Many of the secondary sources raise political questions that are left to the other branches of government and some of which have been rejected by courts that are superior to this trial court.

In any event, much of what is cited by the Defendant has been specifically rejected by courts that are superior to the trial court and if the court adopted the rationale of the Defendant the court would be in violation of the doctrine of *stare decisis*. The Defendant should be aware that this court lacks the legal competence to reverse the decisions of its superior courts and that it is not free to adopt the reasoning of other sources contrary to the express rulings of its superior courts. Where courts superior to the trial court have spoken, the court is bound as a matter of law.

Finally, the Defendant asserts that law clerks frequently act as *de facto* judges, that judges inappropriately delegate non-delegable duties to their law clerks and that law clerks have

usurped the duties of Article III judges. (Doc. # 67, p. 8-9). While it is not customary for courts to discuss at great length how they utilize their law clerks, the Court notes without reservation that each of these complaints, if real, would constitute a serious abuse of the law clerk system and would be grounds for grave concern.

Nothing leaves this Court's chambers that is not the opinion of the judge. Right or wrong, the work is the Court's and law clerk input is limited to research and writing under the direct supervision and control of the Judge. Frankly, if there are errors in this Court's work, they are the honest mistakes of the judge himself. The parties may place blame wherever they wish, but the unvarnished truth is that from the most mundane spelling errors to erroneous holdings on critical rulings the errors are mine alone and I take full responsibility for them. The Court strives mightily to get all decisions it makes right, but if they are in error there should be no question as to who made the decision, because the undersigned makes all of the decisions that come out of this chambers.

Finally, the Defendant wants the Court to keep time records for his personal uses. The Court declines this invitation. The Court knows of no legal authority for such an invasion of the Court's independence. The deliberative processes of the Court will be set forth in its rulings as is the long tradition in our legal system. The Defendant's request is, frankly, insulting and strikes at the heart of the dignity of the our legal system. Decisions in courts are not the product of a minimum number of hours of work–but the product of a deliberative process that is essentially dependent on the complexity of the issues raised.

In the case at bar, the Court has read every word of every document that the Defendant has filed. Much of what has been filed is not germane to the issues before the court, is confused

and the product of an obviously non-law trained person, and overtly irrelevant–but it has all been closely read and considered.  When the Court rules on the various motions pending before it the parties can be assured that it  will do so based on the law of this Circuit and the facts as developed in the record.  The Court can further assure the parties that  the Court will do all research and review necessary to make the best decisions humanly possible; however, the Defendant should be aware that the lack of art in the pleadings in this case raise issues that would not ordinarily be present in a case of this sort.  It would be helpful to the Court if the Defendant would pay more attention to what the United States Court of Appeals for the Eighth Circuit has said on the various issues he intends to raise and less attention to general observations on the law made by  Lord Mansfield in 1768.  It would be a rare case indeed, that turned on a 250 year old observation by a Law Lord made in Privy Council.  Merely cobbling together centuries old axioms and asking the Court to take an action which appears to be completely without modern precedent is not ordinarily a prevailing strategy.  While the Court recognizes the Defendant's constitutional right to proceed *pro se*, there seems to the Court to be issues that might reasonably be raised by the Defendant that seem to be in danger of being ignored because the Defendant lacks sufficient legal expertise to distinguish the meaningful from the arcane.

The MOTION FOR STATEMENT OF FACTS AND CONCLUSIONS OF LAW FOR EACH MOTION SUBMITTED BY DEFENDANT is **DENIED.**

Dated this  19th  day of December, 2006.

      /s/ **Ralph R. Erickson**
Ralph R. Erickson, District Judge
United States District Court