IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER ON DEFENDANT'S** |
| vs. | ) | **PRETRIAL MOTIONS** |
| | ) | |
| | ) | |
| Frederick W. Keiser, Jr., | ) | Criminal Case No. 3:05-cr-80 |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant has been charged under a 22-count indictment with wire fraud, money laundering, and conspiracy charges. After being represented by numerous criminal defense attorneys, Defendant was permitted to proceed pro se, on November 30, 2006, pursuant to Faretta v. California, 422 U.S. 806 (1975). Defendant promptly filed a number of pretrial motions, which the Court subsequently denied.

Before the Court are a number of additional pretrial motions filed by Defendant. He argues for the Court's recusal and disqualification of the United States Attorney's Office. Additionally, Defendant moves for a Bill of Particulars for certain counts and for clarification of a previous Order of the Court. The government filed responses to the pertinent motions.

Trial is scheduled to commence in this case on Monday, March 5, 2007 at 9:30 a.m.

**ANALYSIS**

**Recusal of the Court.** Defendant moves that the Court recuse itself from hearing this case. A judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be

1

questioned." 28 U.S.C. § 455(a). In moving for the Court's recusal, the Defendant "carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." Fletcher v. Conoco Pipe Line Co., 323 F.3d 661, 664 (8th Cir. 2003) (citing Pope v. Fed. Express Corp., 974 F.2d 982, 985 (8th Cir. 1992)).

Defendant accurately states the law as it pertains to a defendant's burden and the Court's obligation to recuse itself under certain circumstances. Indeed, the Court agrees if its impartiality could reasonably be questioned, recusal would be appropriate. However, the Court does not perceive, nor has Defendant presented, any grounds showing this to be the case. Defendant's memorandum in support of his motion to recuse boldly concludes that "he has met that 'substantial burden,' at least as far as a 'reasonable person' is concerned" but does no more than state the legal test for recusal. Defendant's motion and affidavit contain numerous accusations and predictions[1] but fail to state a single fact to support the motion.[2]

---

[1] Defendant's Motion to Recuse states:

This Court apparently:
1.  Does not read anything submitted by the defendant.
2.  Does not address the issues raised
3.  Does not apply the proper legal standards if applying those legal standards would benefit the defendant.
4.  Allows the prosecutor to misrepresent facts and to lie.
5.  Is determined to assist the Government at every turn, including (predictably) manipulating the upcoming trial by refusing to give requested jury instructions, preventing defendant's arguments from reaching the jury, and the like.

The defendant's shopping list of complaints simply misapprehends how courts work generally, and how this Court works in particular. This judge has read every document and exhibit submitted by the defendant. Contrary to his assertion, every issue raised was addressed, although not every argument raised was specifically addressed. Issues are different than arguments and when an argument is so devoid of merit that addressing it would simply clutter the record, courts historically do not address the argument; it is legally sufficient to simply resolve the issue. In this case, arguments not specifically addressed were not addressed because they were both devoid of merit and legally incomprehensible.

[2] The defendant apparently fails to grasp the difference between something that is a mere allegation or conclusion and something that is a proven or shown fact. Merely stating that something is so in affidavit is not the same as raising facts from which a question of fact is raised such that there is actually a question to consider. A

Lacking factual support, Defendant's motion fails. The Court would not hesitate to recuse itself if recusal were the appropriate remedy. However, there is no indication that the Court has acted improperly or that its impartiality may be questioned. In fact, a review of the transcript of the November 30, 2006 status conference, Defendant's most recent appearance on this case, shows that the Court:

> 1. Made efforts to help Defendant secure court-appointed, publicly funded counsel,

---

review of the defendant's affidavit is illustrative of this point. In the affidavit, Defendant first asserts that judges cite to "Wikipedia" and other online sites thus making "former greats in the field of law archaic and useless." Since this Court has never cited to Wikipedia or a similar online encyclopedia in this case or any other case this appears to be nothing but another manifestation of Defendant's belief that all sorts of imaginary wrongs are about to take place in this trial. It would seem to the Court that there is trouble enough in the real questions that confront the defendant without making up pretended slights or "straw men" with whom to do battle. Lest there be any doubt, Defendant should feel confident that the Court will do its level best to decide all questions presented on the facts as proven and the law as developed in the Courts that are superior to this one.

The defendant then moves on to the question of prosecutorial "greed" as a motivation for his prosecution, thus requiring a quashing of the indictment. Defendant makes much of the Court's noting in its January 17, 2007 Order that the defendant provided no authority for this assertion and that the court had found no such authority itself. Unfortunately, he seems to have completely missed the main thrust of the Court's holding, which stated, "More importantly, the defendant has completely failed to support this bare allegation with any factual claims whatsoever." The linchpin of the court's holding was, and is, that the defendant has never pointed to a single specific fact that logically supports his claim. All the defendant has ever stated is: "The 'impermissible ground' here is *greed*. Defendant has been 'singled out,' apparently as perceived 'deep pockets,' for revenue raising reasons *only*." (Doc. #63, p. 7). This rather remarkable claim is supported by a single reference to a book written a decade ago and which apparently asserted that drug prosecutions had increased because the government was interested in profit-making forfeitures. There are no citations to any evidence, either recent or remote in time, from which to draw any indication that anyone in the United States Attorney's Office for the District of North Dakota has been held to a "forfeiture quota" or that they or the office would gain anything by pursuing this prosecution. Thus, the claim that the reason for the prosecution is "greed" appears to be something that the defendant has imagined based upon his reading of a ten year old book about drug prosecutions, scant evidence, indeed, on which to reach any meaningful conclusion.

It is clear that if an indictment is to be set aside, the evidence must in fact be evidence that would be admissible in a court of law. See United States v. Hirsch, 360 F.3d 860, 864 (8th Cir. 2004) (holding that credible evidence is required to support a selective prosecution claim, and conclusory assertions are wholly insufficient to support such claims). Whatever Mr. Burnham's book might be, it is not an authority that could be received as evidence or of which the Court could properly take judicial notice. If the defendant could prevail on this point using this theory, every single indictment that makes a claim for a forfeiture could be attacked merely by reciting "greed" as a mantra. Clearly there are no such talismans in pleading. An indictment is not rendered defective unless there is a "showing of intentional and purposeful discrimination." United States v. Hintzman, 806 F. 2d 840, 842 (8th Cir. 1986). The reason for the rule is plain, "because we afford broad discretion to prosecuting authorities" the defendant bears a heavy burden of *proving* "intentional and purposeful discrimination." Id. In the case at bar the defendant has alleged much but shown virtually nothing. Under these circumstances the defendant's motion to dismiss was properly denied.

which Defendant rejected.  (Tr. pp. 3-6).

    2.  Requested the government supply to Defendant an additional copy of the discovery files, despite the fact that discovery had already been provided to Defendant's former counsel  (Tr. p. 7).

    3. Informed the defendant that the Court would be unable to give legal advice during the trial, but would explain to Defendant the procedures of trying a case.  (Tr. p. 11).

    4.  Warned the defendant about the potential consequences should other persons be indicted and plead guilty in this or other similar cases.  (Tr. pp. 12-13).

    5.  Urged the defendant to discuss this case, including deadlines and other matters, with the government. (Tr. p. 13).

    6.  Gave a lengthy, in-court explanation of trial procedure, including the process of selecting a jury (Tr. pp. 15-17), the order and general content of opening statements (Tr. pp. 17-18), burdens of proof and presentation of evidence (Tr. pp. 18-19), the process of subpoenaing witnesses (Tr. p. 19), Defendant's right to testify or remain silent (Tr. pp. 19-20), rebuttal (Tr. p. 20), the order and general content of closing arguments (Tr. pp. 21-22), verdicts and mistrials (Tr. pp. 22).

    7.  Recommended a number of books and Internet resources Defendant could use in his trial preparation.  (Tr. pp. 22-25).

It appears to the Court that, based on the record, there are no facts or incidents that would cause a reasonable person to question the impartiality of the Court.  In fact, it appears that the Court has been exceptionally forthcoming and patient with this particular case and defendant.  Because Defendant fails to direct the Court to any facts indicating otherwise, his motion for recusal is

**DENIED.**

**Disqualification of the United States Attorney's Office**.  Defendant moves for disqualification of the United States Attorney's Office on two bases:  One, he argues that his pending civil suit against United States Attorney Drew Wrigley creates an unwaivable conflict; Two, he argues the United States Attorney's Office has made material misrepresentations to the Court that require disqualification.

At the outset, Defendant's initiation of a civil suit does not create a conflict warranting disqualification.  As stated in the government's response, vicarious disqualification does not apply to an entire United States Attorney's Office.  See United States v. Kehoe, 310 F.3d 579, 590 (8th Cir. 2002) (holding that, though one Assistant United States Attorney was disqualified, the entire office was not tainted).  In fact, if Mr. Shasky or Ms. Puhl had themselves been sued civilly by Defendant, disqualification would be doubtful.  See United States v. Rosnow, 977 F.2d 399, 411 (8th Cir. 1992) (holding the prosecutor did not need to be disqualified, even though he was the subject of a federal tort claim).  Therefore, Defendant's motion fails on these grounds.

Defendant's second grounds for disqualification is based in his assertion that Mr. Shasky lied to the Court with his statement that "Keiser is not accused of . . . wiring money to himself." Defendant argues this statement was false, and its submission to the Court constitutes unethical conduct.

The wire fraud counts of the indictment state Defendant, "for the purpose of executing and attempting to execute the scheme to defraud, transmitted and caused to be transmitted in interstate and foreign commerce, by means of a wire communication, certain signs, signals, and sounds, that is a money wire. . . to FREDERICK W. KEISER, JR.'s account."  This language used by the United

States is virtually identical to the statutory language of 18 U.S.C. § 1343, which states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned . . .

The essential elements of a wire fraud claim under 18 U.S.C. § 1343, therefore, are "(1) a scheme to defraud, (2) use of interstate wires incident to the scheme, and (3) intent to cause harm." United States v. Ross, 210 F.3d 916, 923 n. 8 (8th Cir. 2000).

If the facts as alleged in the indictment are proven to be true, they do indeed constitute a violation of 18 U.S.C. § 1343. Whether the defendant had money wired from an account in his name to another account in his name is irrelevant. In fact, many wire fraud and money laundering schemes involve accounts in the same person's name at multiple banking facilities. The government's statement that the defendant is not accused of "wiring money to himself" was not inaccurate or untrue. Defendant is, in fact, accused of engaging in a series of acts that constitute a violation of the wire fraud statute, including the specific act of using interstate wires to send money from one account to another. Defendant's allegation that Mr. Shasky lied to the Court is without merit. His motion for disqualification is **DENIED.**

**Bill of Particulars.** Defendant moves for a Bill of Particulars (Doc. #83) for Counts 2, 3, 4, 5, 6, 14, and 15. A trial court is vested with broad discretion in granting or denying a bill of particulars. United States v. Stephenson, 924 F.2d 753, 762 (8th Cir. 1991). A bill of particulars is not a discovery tool. United States v. Hester, 917 F.2d 1083, 1084 (8th Cir. 1990). Rather, it is intended to inform the defendant of the charges against him so he may adequately prepare a defense and surprise at trial will be minimized. United States v. Garrett, 797 F.2d 656, 665 (8th Cir. 1986).

Here, Defendant argues a Bill of Particulars is appropriate because he interprets Counts 2, 3, 4, 5, 6, 14, and 15 to accuse Defendant of wiring money to himself, thus, defrauding himself. He argues that, as the indictment stands, he will be subjected to "trial by ambush," arguing it is "impossible for this defendant to determine the information," such as who was defrauded. (Doc. #84, p. 3).

Defendant previously requested a bill of particulars. In that case, he argued that the "accusations of violations of 18 U.S.C. § 2 fairly informs defendant of *nothing*." (Doc. #59, p. 4) (emphasis original) (internal quotations omitted). At that time, the Court provided the following explanation:

> Such a claim might be understandable if the indictment merely claimed a violation of 18 U.S.C. § 2 without any further explanation. In fact, the indictment does no such thing. The indictment contains 22 specific counts. Each count either specifically sets forth the factual allegations against Defendant or it incorporates such factual allegations by specific reference to previously alleged facts. Under these circumstances, the indictment sufficiently apprises Defendant of the charges against him. His motion for Bill of Particulars is **DENIED.**

(Doc. #78). The Court is not convinced its original ruling was lacking in clarity. However, it is clearly appropriate at this time to give a more detailed explanation.

Keiser seeks a Bill of Particulars for Counts 2, 3, 4, 5, 6, 14, and 15. He argues these counts are devoid of sufficient facts to apprise him of the charges against him and enable him to mount an adequate defense. Without a Bill of Particulars, he argues, he will be unable to defend himself as to these counts at his March 5, 2007 trial. As an example, Count 2 states:

The Grand Jury Further Charges:

    1. The Grand Jury realleges and incorporates by reference paragraphs 1 through 25 of Count One of this Indictment.

<u>Wire Communication</u>

> 1. On or about August 16, 2000, in the District of North Dakota, and elsewhere,
>
> FREDERICK W. KEISER, JR.,
>
> for the purpose of executing and attempting to execute the scheme to defraud, transmitted and caused to be transmitted in interstate and foreign commerce, by means of a wire communication, certain signs, signals, and sounds, that is, a money wire in the amount of $110,828.21 from National Commercial Bank, Kingstown, St. Vincent, West Indies, to FREDERICK W. KEISER, JR.'s account at Wells Fargo Bank, formerly known as Norwest Bank, Minot, North Dakota;
>
> In violation of Title 18, United States Code, Sections 1343 and 2.

(Doc. #1, p. 14). Read alone, the Court acknowledges that the facts provided here do not sufficiently state alleged actions made or taken by Keiser that would constitute violations of 18 U.S.C. §§ 1343 and 2. However, neither this Count, nor Counts 3, 4, 5, 6, 14, or 15, are to be read alone. Each of Counts 2 through 6 specifically begin with the statement, "The Grand Jury realleges and incorporates by reference paragraphs 1 through 25 of Count One of this Indictment." Similarly, Counts 14 and 15 begin with the statement, "The Grand Jury realleges and incorporates by reference paragraphs 1 through 18 of Count Thirteen of this Indictment." To incorporate by reference is to "mak[e] a secondary document part of a primary document by including in the primary document a statement that the secondary document should be treated as if it were contained in the primary one." 781 Black's Law Dictionary (8th ed. 2004). In other words, Count 2 is read by first reading paragraphs 1-25 of Count One, followed by reading the text of Count 2. Count 14 is read by first reading paragraphs 1-18 of Count 13, followed by reading the text of Count 14. When this is done with all Counts, the content of each Counts 2, 3, 4, 5, and 6, is virtually identical to Count 1, and the content of each Counts 14 and 15 is virtually identical to that of Count 13, differing only in the dates, dollar amounts, and locations. Because Defendant has not indicated a need for a Bill of

Particulars as to Count 1 or 13, the Court can only assume that this clarification of the reading of the indictment sufficiently apprises Defendant of the facts surrounding the charge. Under these circumstances, the indictment sufficiently informs Defendant of the charges against him. His motion for Bill of Particulars is **DENIED.**

**Motion for Clarification.** Defendant moves for clarification of the Court's Order dated December 19, 2006 (Doc. #67). Defendant's somewhat convoluted motion appears to request that the Court essentially re-write its previous Order, omitting from its analysis all binding precedent, and instead analyzing Defendant's motion solely with the words of the United States Constitution and the original intent of the framers. The Court questions the suggestion that it could better analyze the Constitution than have more than two centuries of jurists, who by definition construed the Constitution in accordance with the original intent of the framers. Moreover, the Court is perplexed by Defendant's request. The December 19, 2006 Order solely addresses Defendant's Motion for Statement of Facts and Conclusions of Law, which requested statements of facts and conclusions of law for each of Defendant's motions, in addition to requesting the Court and all staff "clock in" and "clock out" on the time spent addressing such motions. The motion, little more than a series of insults and accusations directed toward the Court and the judicial process, itself lacked any substantial reference to the Constitution. The Court suspects Defendant actually intended to seek "clarification" of the Court's January 17, 2007 Order (Doc. #78), but, in any event, the issue is irrelevant. As discussed in the Court's previous Order, the Court is bound by relevant precedent (Doc. #73):

> Stare decisis is the doctrine that holds that the Court is bound to "follow earlier judicial decisions when the same points arise again in litigation." BLACK'S LAW DICTIONARY, 1414 (7th Ed. 1999). Trial Courts are bound to apply the law as it is developed by Courts having jurisdiction over the lower court in question. For example, this Court must follow the

9

law as developed in the Supreme Court of the United States and the Court of Appeals for the Eighth Circuit and, under certain circumstances, as developed by the North Dakota Supreme Court. If the Court of Appeals for the Eighth Circuit has spoken directly on an issue before the court, it is not free to substitute its own notions of what the law is or ought to be. Where a superior court has specifically held on a question, the trial court simply lacks the legal competence to hold otherwise. Id.

Defendant's Motion for Clarification is hereby **DENIED.**

## DECISION

Defendant's motions are unsupported by facts, and, in some cases, controlling law. Defendant has failed to illustrate to the Court why his motions should be granted, and upon its own research and reflection, the Court finds it is unable to find any independent support for Defendant's requests. For all the above reasons, Defendant's motions are hereby **DENIED.**

**IT IS SO ORDERED.**

Dated this 26th day of February, 2007.

/s/   Ralph R. Erickson
Ralph R. Erickson, District Judge
United States District Court